WILLIAM H. PALMER, Administrator, *vs.* THE PROVIDENCE INSTITUTION FOR SAVINGS.

The charter and by laws of a savings bank contained a provision that " no person shall receive any part of his principal or dividend without producing the original book that such payment may be entered thereon."   A. making a deposit assented to the by laws and received a deposit book.

After the death of A. his administrator was unable to obtain the deposit book from A.'s family, and on the refusal of the bank to pay A.'s deposit without a presentation of the book, brought suit against the bank.

*Held,* that the administrator was entitled to recover.

*Held,* further, that as no claim to the deposit had been made by any third person, the administrator should not be compelled to give a bond of indemnity to the bank.

*Held,* further, that the administrator could maintain his action without first having A.'s family examined under Pub. Stat. R. I. cap, 185, §§ 18, 19.

EXCEPTIONS to the Court of Common Pleas.

*Joseph C. Ely,* for defendant, in support of the exceptions.

I. The charter and by laws of the defendant provide that "no person shall receive any part of his principal or dividend without producing the original book." *Wall* v. *Provident Institution for Savings,* 3 Allen, 96. Although afterwards in the same case, 6 Allen, 320, the court allowed the money to be drawn out upon the security of a bond given, yet in Rhode Island in a suit at law such a conditional judgment should not be given. 1 Story Eq. Juris. § 82 ; *East India Company* v. *Boddam,* 9 Ves. Jun. 464, 466 ; 2 Daniel on Negotiable Instruments, cap. 46. But if the court adopts the decision in 6 Allen, 320, the plaintiff ought not to be allowed to recover without tendering a bond of indemnity.

II. But relief on bond tendered should only be allowed where the instrument is lost, and in this case the book is admittedly not lost, and, as the defendant claims, the plaintiff has not sufficiently exerted himself to recover it. See 1 Greenleaf on Evidence, § 558.

III. The plaintiff at least should have cited the mother, brother, and sister of his intestate before the Probate Court, under Pub. Stat. R. I. cap. 185, §§ 18, 19.

*Stephen A. Cooke, Jun., contra.*

*January* 27, 1883. MATTESON, J. This is an action of *assumpsit* to recover money deposited by the plaintiff's intestate in the defendant institution, with the dividends of interest which have accrued thereon.

It appeared from the evidence that the plaintiff, having been appointed administrator on the estate of John E. Moran, deceased, went to the house of the mother of his intestate, where the deceased had been living immediately prior to his death, and inquired of his mother and sister for his bank book containing his account

with the defendant ; that the plaintiff was informed by the sister that the book was in the hands of an uncle in Boston, who had paid the funeral expenses of the deceased ; that the brother of the deceased, then coming in, said that the uncle did not live in Boston, and the family then refused to give him any further information ; that he, however, made search for the book about the house, being all the while told it was not there, but did not succeed in finding it, or getting any further information as to where it was ; that he went to the defendant, the assistant treasurer of which told him there was due to the estate of the deceased two hundred dollars and interest, but said, in answer to the plaintiff's demand for it, that, under its charter and by laws, the defendant could not pay the money without the book ; that the plaintiff thereupon offered to be personally responsible to the defendant for any loss or damage to it, by reason of the payment of the money to him, but the assistant treasurer replied, that no matter what security might be offered, the book must be produced before the money could be drawn ; that the plaintiff had not sufficient assets, exclusive of the deposit, to pay the debts of his intestate.

It further appeared that both the charter and by laws of the defendant contained a provision, that " no person shall receive any part of his principal or dividend without producing the original book, that such payment may be entered thereon ; " that Moran, the plaintiff's intestate, when he made the deposit, signed the depositors' book of the institution, assenting to all its by laws, rules, and regulations ; that it was the invariable custom of the institution to issue books to depositors, containing printed copies of the by laws, and that such a book was issued to Moran.

It is contended on the part of the defendant that by reason of the provision in its charter and by laws, quoted above, the defendant cannot lawfully pay to the plaintiff the amount of the deposit, unless he shall produce the deposit book issued to his intestate, and that, therefore, he cannot recover.

The provision in question was evidently designed as a safeguard against the payment of deposits to the wrong persons.  It would be impossible for the officers of an institution, like the defendant, having, perhaps, several thousand depositors, to recognize and identify each depositor when he should apply for payment of his

deposit. The possession of the book would afford a strong presumption that the person presenting it was authorized to receive the money. A depositor, therefore, who can produce his book may reasonably be required to do so, as the condition of receiving payment. But we do not think that either the legislature, when they incorporated the provision into the defendant's charter, or its trustees when they inserted it in the by laws, contemplated that it should be applied to a depositor unable to produce the book in consequence of its loss or destruction, or the wrongful withholding of its possession from him by another. The practical effect of such a construction would be to deprive a depositor, so situated, of his money.

The construction of the same provision in the by laws of the defendant institution was involved in *Warhus* v. *Bowery Savings Bank*, 21 N. Y. 543. In that case the plaintiff's intestate, at the time of making the original deposit, signed the rules and regulations of the bank, and received a book in which the deposit was entered, and in the front part of which was pasted a copy of the rules and regulations of the bank. The plaintiff demanded of the defendant the moneys standing on the books of the bank to the credit of his intestate, but without producing the book, or giving any reason for its non-production, except that he said he had it not. At the trial in the Superior Court the defendant moved for a nonsuit, and the judge thereupon offered to allow the plaintiff to prove that the book had been lost or destroyed, or that, on a proper search, it could not be found. The plaintiff made no offer of such evidence and the complaint was dismissed. The judgment having been affirmed at the general term, the plaintiff appealed. Davies, J., in the opinion of the court on the appeal, said : " We see nothing unreasonable in this regulation ; and we fail to come to the conclusion that it was intended, or does, in fact, work any forfeiture of the depositor's money. It is to receive a reasonable construction, and not to be perverted to consummate fraud or work injustice. If the depositor, when he wishes to withdraw his money, cannot do what the regulations of the defendants require and what he has agreed and stipulated to do, he must certainly do the next best thing, account for the non-production and show its loss or destruction. There would be no

safety either to the bank or the depositor, if the former was bound
to pay, on demand, without the production of the pass book as the
evidence of authority to receive the money by the person demand-
ing it, or if it is not produced, the same security to both requires
some excuse for its non-production to be given. . . . We think
that if we hold that the pass book should have been produced, or
proof given of its loss or destruction, or that proper search had
been made for it, and that it could not be found, no injustice is
done to either party, but that the rights and security of both are
alike preserved."

And see, also, *Wall* v. *Provident Institution for Savings*, 6
Allen, 320, 321, from which it seems that the requirement is to
be insisted upon less strictly against an administrator representing
the rights of creditors, since in asserting their rights to the fund
it cannot be supposed that the book would be under their control.

The defendant further contends that the plaintiff, if allowed to
prevail, ought not to recover without first tendering to the defend-
ant a bond of indemnity.   We see no occasion for such a bond.
In *Warhus* v. *Bowery Savings Bank*, 21 N. Y. 543, cited above,
the tendering of a bond of indemnity does not seem to have been
considered necessary to a recovery.   In *Wall* v. *Provident Institu-
tion for Savings*, 6 Allen, 320, also cited above, in which a bond
was required as a condition precedent to recovery, the fund was
claimed by a third person, not a party to the suit, as her property.
The deposit had been made by Michael Wall, the plaintiff's intes-
tate, in trust for Margaret Wall, for the purpose, as found by the
court in that suit, of preventing its attachment by creditors.   The
deposit book issued to him had been given by him to one Powers,
with instructions to keep it for him, and if he died, to give it to
Margaret Wall, and it had been so given to her after his death.
Margaret Wall had produced the book to the defendant and
claimed the money as her property.   In the present case no claim
to the fund has been interposed by any other person, nor has the
defendant had notice of the legal or equitable claims of any other
person than the plaintiff thereto.

The defendant claims that the plaintiff has not sufficiently ex-
erted himself to gain possession of the book, in this, that he did
not cite the mother, brother, and sister of the deceased, before the

Municipal Court, for examination, as provided by Pub. Stat. R. I. cap. 185, §§ 18, 19.[1]

It is by no means certain that such examination would have developed any satisfactory information concerning the book, and even if it had, that the plaintiff would have been enabled thereby to get possession of the book. But, however that may have been, we do not think that he was bound to incur the expense of that proceeding as a condition of bringing and maintaining his suit.

Exceptions overruled and judgment of the Court of Common Pleas affirmed, with costs.                      *Exceptions overruled.*

---

[1] As follows:

SECT. 18. Courts of probate shall have power to cite before them and examine under oath any person suspected and complained of by an executor, administrator, heir, creditor, legatee, or other person having lawful right or claim to the estate of any person deceased, of concealing or of having embezzled or conveyed away any of the personal estate left by the testator or intestate, for the discovery of the same.

SECT. 19. Such court may by proper process signed by its clerk attach such person, if he shall neglect or refuse to appear at the time required by the citation, and bring him before them, and if he shall refuse to be examined, or to answer interrogatories upon oath, respecting the estate which he may be suspected of concealing or of having embezzled or conveyed away, the said court of probate may commit the person so refusing to the jail of the county, there to remain until he shall consent to be examined and answer interrogatories upon oath as aforesaid, or shall be released by the consent of the person complaining against him, or by order of the Supreme Court.